## UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

RALPH MENOTTI,                          )
                                        )
          Plaintiff,              )        `FILED: MAY 13, 2008`
                                        )  No. `08CV2767         TG`
    v.                             )        `JUDGE COAR`
                                        )        `MAGISTRATE JUDGE BROWN`
THE METROPOLITAN LIFE INSURANCE         )
COMPANY,                                )
          Defendant.              )

### COMPLAINT AT LAW

NOW COMES the Plaintiff, Ralph Menotti, by and through his attorneys, The Law Offices of Eugene K. Hollander, and for his Complaint at Law, states as follows:

### Jurisdiction and Venue

1.    Jurisdiction is based upon the matter in controversy arising under the laws of the United States, 28 U.S.C. § 1331 and under 29 U.S.C. § 1001, et. seq., ("ERISA"). Declaratory judgment is sought pursuant to 28 U.S.C. § § 2201 and 2202, and 29 U.S.C. § 1132. This Court has jurisdiction over all Counts pursuant to 29 U.S.C. § 1132(e).

2.    Ralph Menotti, ("Menotti") is a resident of Vernon Hills, Lake County, Illinois.

3.    The Metropolitan Life Insurance Company ("MetLife") is a foreign corporation with its principal place of business located at Boston, Massachusetts, and through its affiliate, New England Financial, is an insurance company providing a long term disability insurance plan, ("the Plan").

4.    During all relevant times herein, Menotti procured a long term disability insurance policy on January 15, 1992 through MetLife's affiliate, New England

Financial, policy No. 19-1D223290 and was a participant in the Plan maintained by MetLife.  A copy of the policy is attached hereto as **Exhibit 1**.

5.      MetLife administered and maintained the Plan within the meaning of ERISA, 29 U.S.C. § 1002(16)(B), a party in interest with respect to the Plan within the meaning of ERISA, 29 U.S.C. § 1002(14), and a fiduciary of the Plan within the meaning of ERISA, 29 U.S.C. § 1002(21).

## Facts

6.      On November 23, 2005, Menotti suffered personal injuries in an automobile accident.

7.      On May 1, 2006, Menotti submitted an Income Protection Claim, claiming that he was disabled and unable to perform the functions of his job as s commodities broker, performing open outcry trading with the Chicago Mercantile Exchange, ("CME"), from March 20, 2006.

8.      On July 30, 2006, Menotti formally left his position with the CME.

9.      Thereafter, MetLife commenced paying Menotti monthly disability benefit payments of $5550/month as of June, 2006.

10.     On December 18, 2007 MetLife wrote Menotti a letter denying his claim.

11.     Notwithstanding the denial of Menotti's claim, Menotti is disabled within the meaning of his policy in that his restrictions and limitations preclude him from engaging in his chosen profession as a commodities trader.

12.     Alternatively, Menotti is "residually disabled" within the meaning of the policy, and is entitled to benefits under this provision of the policy.

13.    Menotti timely served MetLife with an administrative appeal of his claim in accordance with the provisions of the Plan on March 3, 2008.

14.    MetLife consequently denied the administrative appeal of his claim on May 8, 2008 on the basis that Menotti was not totally or residually disabled under the terms of the Plan.

15.    Plaintiff has exhausted the Plan's claims procedure.

16.    Benefits are due Menotti and vested under the Plan as Plaintiff has complied with all conditions in order to receive such disability benefits.

17.    Menotti was and is still totally disabled, or in the alternative, residually disabled from engaging in the employment as a commodities trader.

18.    MetLife's denial of Menotti's claim for medical benefits under the Plan was arbitrary and capricious and in violation of ERISA as an inherent conflict of interest existed, as MetLife decided whether Menotti was eligible for benefits, paid those benefits, and then ultimately decided that Menotti was not disabled within the meaning of the Plan.

## COUNT I – Violation of Plan Terms

19.    Plaintiff repeats and realleges Paragraphs 1 through 17 and incorporates them by reference herein.

20.    Defendant MetLife's denial of the claim is a breach of the terms of the Plan in violation of 29 U.S.C. § 1104(a)(1)(D).

21.    Pursuant to 29 U.S.C. § 1132(g)(1), Plaintiff is entitled to recover his attorney's fees.

## COUNT II – Interference With ERISA Rights

22.     Plaintiff repeats and realleges Paragraphs 1 through 21 and incorporates them by reference herein.

23.     As Defendant MetLife rejected Menotti's appeal, Defendant intended to frighten Plaintiff into not pursuing his Plan benefit.  Accordingly Defendant interfered with Plaintiff's rights under ERISA by refusing to pay his Plan benefit and by forcing him to incur attorney's fees to obtain these benefits, in violation of 29 U.S.C. § 1140.

**WHEREFORE**, Plaintiff respectfully prays that this Honorable Court:

(a)     Enter a judgment finding that Defendant has breached its fiduciary obligations to the Plan;

(b)     Determine the losses to the Plaintiff as a result of Defendant's breach;

(c)     Declare the Defendant to be liable to Menotti for the loss resulting from its breach;

(d)     Award all statutory penalties and reasonable attorneys' fees and costs of this action to Plaintiff pursuant to 29 U.S.C. § 1132(g);

(e)     Order any and all other relief this Court deems fair and just.

**Plaintiff,**
**Ralph Menotti,**


By: /s/ Eugene K. Hollander
     One of his Attorneys

Eugene K. Hollander
Paul W. Ryan
**The Law Offices of Eugene K. Hollander**
33 North Dearborn
Suite 2300
Chicago, IL 60602
(312) 425-9100
ehollander@ekhlaw.com
pryan@ekhlaw.com

# EXHIBIT
# 1



RALPH MENOTTI III

191D223290    JAN 15, 1992    **Date of Issue**



**NEW ENGLAND FINANCIAL™**
A MetLife Affiliate

**NEW ENGLAND MUTUAL LIFE INSURANCE COMPANY**
Since 1835

Disability Income
Administration Center: 18 Chestnut Street
Worcester, Mass 01608

---

New England Mutual Life Insurance Company will pay the benefits provided in this Policy for loss due to Injury or Sickness.

We have issued this Policy to You in consideration of the payment of the premium and the statements made in Your application. Your application is part of this Policy.

**Insured**        RALPH MENOTTI III

**Policy Number**    191D223290    JAN 15, 1992    **Date of Issue**

**NON-CANCELLABLE AND GUARANTEED CONTINUABLE TO AGE 65. NO CHANGE IN PREMIUM RATES.** As long as the premium is paid on time, We cannot change Your Policy or its premium rate until Your 65th birthday.

**RENEWAL OPTIONS AFTER YOU REACH AGE 65. SUBJECT TO CHANGE IN PREMIUM RATES.** You may continue Your Policy for a Total Disability benefit with a limited benefit period while You are actively and regularly employed full time. There is no age limit. This option is explained in PART 7.

When You are no longer actively and regularly employed after age 65, You may continue Your Policy for the rest of Your life. The benefit will be limited to a Hospital Confinement Indemnity. This benefit will take the place of all other benefits under the Policy. This option is explained in PART 8.

**YOUR RIGHT TO CANCEL.** If You are not satisfied with Your Policy, You may cancel it. Return the Policy to Us or Our agent by midnight of the tenth day after the date You receive it. If You return the Policy by mail, it must be properly addressed, postage prepaid, and postmarked no later than midnight of that tenth day. Our mailing address is Disability Income Administration Center, 18 Chestnut Street, Worcester, Massachusetts 01608. Within ten days after We receive the Policy, We will refund any premium You have paid. The Policy will be considered to have never been issued.

**READ YOUR POLICY CAREFULLY.** It is a legal contract between You and Us.

Signed for New England Mutual Life Insurance Company.

_Daniel D. Jordan_
**Secretary**

_James M. Benson_
**Chief Executive Officer**

CHARTERED IN MASSACHUSETTS
NON-PARTICIPATING

# TABLE OF CONTENTS

|  | Page |
|---|---|
| Renewal Provisions | 1 |
| Policy Schedule | 3 |
| Automatic Increase Benefit | 3 |
| Part 1 —— Definitions | 6 |
| Part 2 —— Benefits | 8 |
|     Total Disability Benefit | |
|     Residual Disability Benefit | |
|     Recovery Benefit | |
|     Presumptive Total Disability Benefit | |
|     Cosmetic or Transplant Surgery | |
|     Rehabilitation | |
|     Survivor Benefit | |
| Part 3 —— Exclusions | 11 |
| Part 4 —— Premium and Reinstatement | 12 |
| Part 5 —— Waiver of Premium | 13 |
| Part 6 —— Recurrent and Concurrent Disability | 13 |
| Part 7 —— Renewal Option After Age 65 | 14 |
|     If Employed - Total Disability Benefit | |
| Part 8 —— Renewal Option After Age 65 | 15 |
|     If Not Employed - Hospital Confinement Indemnity | |
| Part 9 —— Claims | 16 |
| Part 10 ——General Provisions | 17 |

A copy of Your application, added benefits You have purchased, and any added provisions are attached at the back of the Policy.

POLICY SCHEDULE

POLICY NUMBER:  191D223290                    DATE OF ISSUE:  JAN 15, 1992

INSURED:        RALPH MENOTTI III

POLICY OWNER:   THE INSURED

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

SUMMARY OF PREMIUM  PREFERRED

ANNUAL PREMIUM FOR DISABILITY BENEFITS        $2,655.00
ANNUAL PREMIUM FOR ADDITIONAL BENEFITS           $83.15
TOTAL ANNUAL PREMIUM                          $2,738.15


YOUR MONTHLY PREMIUM                            $236.85
    DRAFT PLAN

THIS PREMIUM WILL REMAIN IN EFFECT UNTIL YOUR 65TH BIRTHDAY.  IT IS
SUBJECT TO CHANGE IF YOU RENEW YOUR POLICY AFTER YOUR 65TH BIRTHDAY.


\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

TABLE OF DISABILITY BENEFITS

| FROM INJURY OR FROM SICKNESS | COMMENCEMENT DATE | MAXIMUM MONTHLY AMOUNT | MAXIMUM BENEFIT PERIOD* |
|---|---|---|---|
| | 91ST DAY | $4,000.00 | TO AGE 65 |

QUALIFICATION PERIOD FOR RESIDUAL DISABILITY:   30 DAYS
*THE MAXIMUM BENEFIT PERIOD MAY CHANGE DUE TO YOUR AGE AT TOTAL DISABILITY.
PLEASE SEE POLICY SCHEDULE II.
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

MODIFICATION OF COVERAGE


NONE.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

POLICY SCHEDULE

POLICY NUMBER:   191D223290                    DATE OF ISSUE:  JAN 15, 1992

INSURED:         RALPH MENOTTI III

POLICY OWNER:    THE INSURED

**********************************************************************

TABLE OF ADDITIONAL BENEFITS

| ADDITIONAL BENEFITS ATTACHED | AMOUNT OF BENEFIT | MAXIMUM BENEFIT PERIOD | ANNUAL PREMIUM PRIOR TO AGE 6 |
|---|---|---|---|
| FUTURE INCOME OPTION | | | |
| UNIT OF INCREASE: | $500.00 | -- | $83.15 |
| MAXIMUM # OF UNITS: | 5 UNITS | | |
| EXPIRATION DATE: | JAN 15, 2000 | | |
| (875) | | | |

POLICY SCHEDULE II

POLICY NUMBER:  191D223290                    DATE OF ISSUE:  JAN 15, 1992

INSURED:       RALPH MENOTTI III

POLICY OWNER:  THE INSURED

**********************************************************************

MAXIMUM BENEFIT PERIODS

FOR TOTAL DISABILITY BENEFITS PAYABLE TO AGE 65, IF TOTAL DISABILITY BEGINS:

| | |
|---|---|
| BEFORE AGE 61 | TO AGE 65 |
| AT AGE 61 BUT BEFORE AGE 62 | 48 MONTHS |
| AT AGE 62 BUT BEFORE AGE 63 | 42 MONTHS |
| AT AGE 63 BUT BEFORE AGE 64 | 36 MONTHS |
| AT AGE 64 BUT BEFORE AGE 65 | 30 MONTHS |
| AT OR AFTER AGE 65 BUT BEFORE AGE 75 | 24 MONTHS |
| AT OR AFTER AGE 75 | 12 MONTHS |

POLICY SCHEDULE III

POLICY NUMBER:  191D223290                     DATE OF ISSUE:  JAN 15, 1992

INSURED:        RALPH MENOTTI III

POLICY OWNER:   THE INSURED

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*)

AUTOMATIC INCREASES


    $200 WILL BE AUTOMATICALLY ADDED TO YOUR MONTHLY DISABILITY BENEFIT
WITHOUT EVIDENCE OF INSURABILITY.  THIS WILL BE DONE ON EACH INCREASE DATE.


THESE INCREASES ARE SUBJECT TO THE TIMELY PAYMENT OF THE PROPER PREMIUM.
THESE PREMIUMS ARE BASED UPON YOUR ATTAINED AGE ON THE INCREASE DATE.  THEY
ARE LISTED BELOW.

| INCREASE DATE | MONTHLY BENEFIT INCREASE | ANNUAL PREMIUM INCREASE |
|---|---|---|
| JAN 15, 1993 | $200.00 | $131.18 |
| JAN 15, 1994 | $200.00 | $135.32 |
| JAN 15, 1995 | $200.00 | $139.46 |
| JAN 15, 1996 | $200.00 | $146.28 |
| JAN 15, 1997 | $200.00 | $153.12 |
| TOTAL INCREASE | $1,000.00 | $705.36 |

A BENEFIT INCREASE WILL APPLY ONLY TO A DISABILITY WHICH STARTS AFTER THE
INCREASE DATE.  IT WILL NOT APPLY TO A CONTINUATION OF A PRIOR DISABILITY.
SEE THE RECURRENT DISABILITY SECTION OF THIS POLICY.  IF THE PREMIUM FOR
THE POLICY IS BEING WAIVED (SEE WAIVER OF PREMIUM SECTION) ON THE INCREASE
DATE, THE PREMIUM FOR THE INCREASE WILL ALSO BE WAIVED.  WHEN YOU RESUME
PAYING PREMIUMS FOR THE POLICY, YOU MUST ALSO START PAYING THE PREMIUM
FOR THE INCREASE.


YOU MAY REFUSE AN INCREASE BY NOTIFYING US IN WRITING 30 DAYS PRIOR TO THE
INCREASE DATE.  YOUR REFUSAL OF AN INCREASE WILL NOT AFFECT THE REMAINING
AUTOMATIC INCREASES.  HOWEVER, IF YOU REFUSE THE FIRST TWO CONSECUTIVE
INCREASES ALL FURTHER INCREASES WILL BE CANCELLED.


PRIOR TO YOUR 60TH BIRTHDAY, YOU MAY APPLY FOR ADDITIONAL AUTOMATIC
INCREASES.  YOU CAN DO THIS BY MAKING FORMAL APPLICATION WITHIN THE PERIOD
OF 60 DAYS PRIOR TO AND 31 DAYS AFTER THE LAST INCREASE DATE SHOWN ABOVE.
APPROVAL WILL BE SUBJECT TO OUR UNDERWRITING GUIDELINES.

INSURED        Ralph Menotti III

POLICY NUMBER    191D2232900

POLICY OWNER    The Insured

POLICY SCHEDULE (CONTINUED)

------------------------------------AUTOMATIC INCREASES------------------------------------

$200  WILL BE AUTOMATICALLY ADDED TO YOUR MAXIMUM MONTHLY AMOUNT AS SHOWN IN THE TABLE OF DISABILITY BENEFITS WITHOUT EVIDENCE OF INSURABILITY. THIS WILL BE DONE ON EACH INCREASE DATE.

THESE INCREASES ARE SUBJECT TO THE TIMELY PAYMENT OF THE PROPER PREMIUM. THESE PREMIUMS ARE BASED UPON YOUR ATTAINED AGE ON THE INCREASE DATE.  THEY ARE LISTED BELOW.

| INCREASE DATE | MONTHLY BENEFIT INCREASE | ANNUAL PREMIUM INCREASE |
|---|---|---|
| January 15, 1997 | $200 | $135.48 |
| TOTAL INCREASE | $200 | $135.48 |

A BENEFIT INCREASE WILL APPLY ONLY TO A DISABILITY WHICH STARTS AFTER THE INCREASE DATE.  IT WILL NOT APPLY TO A CONTINUATION OF A PRIOR DISABILITY. SEE THE RECURRENT DISABILITY SECTION OF THIS POLICY.  IF THE PREMIUM FOR THE POLICY IS BEING WAIVED (SEE WAIVER OF PREMIUM SECTION) ON THE INCREASE DATE, THE PREMIUM FOR THE INCREASE WILL ALSO BE WAIVED.  WHEN YOU RESUME PAYING PREMIUMS FOR THE POLICY, YOU MUST ALSO START PAYING THE PREMIUM FOR THE INCREASE.

YOU MAY REFUSE AN INCREASE BY NOTIFYING US IN WRITING 30 DAYS PRIOR TO THE INCREASE DATE.  YOUR REFUSAL OF AN INCREASE WILL NOT AFFECT THE REMAINING AUTOMATIC INCREASES.  HOWEVER, IF YOU REFUSE THE FIRST TWO CONSECUTIVE INCREASES ALL FURTHER INCREASES WILL BE CANCELLED.

PRIOR TO YOUR 50TH BIRTHDAY, YOU MAY APPLY FOR ADDITIONAL AUTOMATIC INCREASES.  YOU CAN DO THIS BY MAKING FORMAL APPLICATION WITHIN THE PERIOD OF 60 DAYS PRIOR TO AND 31 DAYS AFTER THE LAST INCREASE DATE SHOWN ABOVE.  APPROVAL WILL BE SUBJECT TO OUR UNDERWRITING GUIDELINES.

INSURED      Ralph Menotti III

POLICY NUMBER    191D2232900

POLICY OWNER    The Insured


POLICY SCHEDULE (CONTINUED)


-------------------------------------------AUTOMATIC INCREASES-------------------------------------------


$150  WILL BE AUTOMATICALLY ADDED TO YOUR MAXIMUM MONTHLY AMOUNT AS
SHOWN IN THE TABLE OF DISABILITY BENEFITS WITHOUT EVIDENCE OF INSURABILITY.
THIS WILL BE DONE ON EACH INCREASE DATE.


THESE INCREASES ARE SUBJECT TO THE TIMELY PAYMENT OF THE PROPER PREMIUM.
THESE PREMIUMS ARE BASED UPON YOUR ATTAINED AGE ON THE INCREASE DATE.  THEY
ARE LISTED BELOW.


| INCREASE DATE | MONTHLY BENEFIT INCREASE | ANNUAL PREMIUM INCREASE |
|---|---|---|
| January 15, 1998 | $150 | $111.14 |
| January 15, 1999 | $150 | $116.15 |
| January 15, 2000 | $150 | $121.17 |
| January 15, 2001 | $150 | $128.04 |
| January 15, 2002 | $150 | $134.91 |
| TOTAL INCREASE | $750 | $611.41 |


A BENEFIT INCREASE WILL APPLY ONLY TO A DISABILITY WHICH STARTS AFTER THE
INCREASE DATE.  IT WILL NOT APPLY TO A CONTINUATION OF A PRIOR DISABILITY.
SEE THE RECURRENT DISABILITY SECTION OF THIS POLICY.  IF THE PREMIUM FOR
THE POLICY IS BEING WAIVED (SEE WAIVER OF PREMIUM SECTION) ON THE INCREASE
DATE, THE PREMIUM FOR THE INCREASE WILL ALSO BE WAIVED.  WHEN YOU RESUME
PAYING PREMIUMS FOR THE POLICY, YOU MUST ALSO START PAYING THE PREMIUM
FOR THE INCREASE.


YOU MAY REFUSE AN INCREASE BY NOTIFYING US IN WRITING 30 DAYS PRIOR TO THE
INCREASE DATE.  YOUR REFUSAL OF AN INCREASE WILL NOT AFFECT THE REMAINING
AUTOMATIC INCREASES.  HOWEVER, IF YOU REFUSE THE FIRST TWO CONSECUTIVE
INCREASES ALL FURTHER INCREASES WILL BE CANCELLED.


PRIOR TO YOUR 50TH BIRTHDAY, YOU MAY APPLY FOR ADDITIONAL AUTOMATIC
INCREASES.  YOU CAN DO THIS BY MAKING FORMAL APPLICATION WITHIN THE
PERIOD OF 60 DAYS PRIOR TO AND 31 DAYS AFTER THE LAST INCREASE DATE
SHOWN ABOVE.  APPROVAL WILL BE SUBJECT TO OUR UNDERWRITING GUIDELINES.

## POLICY CHANGE RIDER

| Insured | Policy No. | Date Of Policy Change |
|---|---|---|
| Ralph Menotti III | 191D2232900 | November 15, 1996 |

At the request of the Insured and in consideration of the premium change stated herein, it is agreed that the above Policy is changed as of the date shown above, as follows:

TYPE OF CHANGE :  Policy Changed to Preferred Non-Smoker

In consideration of the above change, the annual premium for your benefits have changed as follows :

|  | PREMIUM | |
|---|---|---|
|  | OLD | NEW |
| Total Disability Benefits: | $3,067.78 | $2,664.78 |
| Future Income Option Benefit, Form H875: | $83.15 | $72.30 |
| Total Annual Premium for policy: | $3,150.93 | $2,737.08 |
| Modal Premium: MONTHLY | $272.56 | $236.76 |

In the event additional insurance is issued under this Policy Change, the incontestable clause of the Policy will apply to such additional insurance from the date the Policy Change becomes effective.

All provisions of the policy to which this Policy Change is attached remain the same except where changed as stated above.

This Policy Change is effective on the date shown above.  It forms a part of the Policy to which it is attached.

Signed for Us at Worcester, Massachusetts.

THE NEW ENGLAND MUTUAL LIFE INSURANCE COMPANY

*James A. Fallaher*

Secretary

Accepted by

_____

Insured

Form A592a NE

# PART 1
## DEFINITIONS

THE FOLLOWING WORDS HAVE SPECIAL MEANINGS. THEY ARE IMPORTANT IN DESCRIBING YOUR RIGHTS AND OUR RIGHTS UNDER THE POLICY. REFER BACK TO THESE MEANINGS AS YOU READ YOUR POLICY.

1.1    "**Policy**" means the legal contract between You and Us. The policy, the application, the Policy Schedule, and any attached papers that We call riders, amendments, or endorsements make up the entire contract between You and Us.

1.2    "**You**" and "**Your**" refer to the Insured named in the Policy Schedule.

1.3    "**We**", "**Us**" and "**Our**" refer to New England Mutual Life Insurance Company. Our Disability Income Administration Center is 18 Chestnut Street, Worcester, Massachusetts, 01608.

1.4    "**Date of Issue**" means the date that the Policy becomes effective. It is shown on the Policy Schedule.

1.5    "**Injury**" means accidental bodily injury sustained after the Date of Issue and while Your Policy is in force.

1.6    "**Sickness**" means sickness or disease which first manifests itself after the Date of Issue and while Your Policy is in force. It includes Disability due to complications of pregnancy or childbirth. It includes Disability due to normal pregnancy or childbirth after You have been Disabled for 90 days.

1.7    "**Physician**" means any licensed practitioner of the healing arts practicing within the scope of his or her license. A Physician must be a person other than You.

1.8    "**Physician's Care**" means the regular and personal care of a Physician which, under prevailing medical standards, is appropriate for the condition causing the disability.

1.9    "**Your Occupation**" means the occupation or occupations in which You are regularly engaged at the time Disability begins.

1.10    "**Total Disability**" means that because of Injury or Sickness:

    a.    You are unable to perform the important duties of Your Occupation; and
    b.    You are not engaged in any other gainful occupation; and
    c.    You are receiving Physician's Care. We will waive this requirement if We receive written proof acceptable to Us that further Physician's Care would be of no benefit to You.

If You retire prior to age 65, then "Total Disability" shall mean You are completely unable to engage in the normal activities of a retired person of like age and good health. If You retire prior to age 65, then this definition remains in effect until your 65th birthday.

1.11    **"Residual Disability"**, prior to the Commencement Date, means that due to Injury or Sickness which begins prior to age 65:

    a. (1) You are unable to perform one or more of the important duties of Your Occupation; or
        (2) You are unable to perform the important duties of Your Occupation for more than 80% of the time normally required to perform them; and
    b. You are receiving Physician's Care. We will waive this requirement if We receive written proof acceptable to Us that further care would be of no benefit to You; and
    c. You are not Totally Disabled.

As of the first Commencement Date to occur, Residual Disability means that due to the continuation of that Injury or Sickness:

    a. You incur a Loss of Earnings while You are engaged in Your Occupation or another occupation; and
    b. You are receiving Physician's Care. We will waive this requirement if We receive written proof acceptable to Us that further care would be of no benefit to You; and
    c. You are not Totally Disabled.

Residual Disability must follow right after a period of Total Disability that lasts as least as long as the Qualification Period, if any. This period is shown on the Policy Schedule.

1.12    **"Recovery"** means a period which begins prior to age 65 during which:

    a. You incur a Loss of Earnings which follows Total or Residual Disability which continued at least to the Commencement Date; and
    b. The Loss of Earnings is due to the prior Injury or Sickness which caused the Total or Residual Disability; and
    c. You are working full time in Your Occupation. "Full time" means at least as many hours as You were working before Your Disability began.

1.13    **"Disability"or "Disabled"** refers to a continuing period of Total and/or Residual Disability. For a Maximum Benefit Period "To Age 65" or "Lifetime", successive periods will be deemed to be continuing if:

    a. Due to the same or related causes; and
    b. Separated by no more than 12 months.

For all other Maximum Benefit Periods, successive periods will be deemed to be continuing if:

    a. Due to the same or related causes; and
    b. Separated by no more than 6 months.

Otherwise such periods will be deemed to be new and separate Disabilities. The Maximum Benefit Period is shown on the Policy Schedule.

1.14    **"Commencement Date"** is the day shown on the Policy Schedule when benefits begin during a Disability.

1.15   **"Maximum Benefit Period"** is the longest period of time for which We will pay benefits during any Disability. It is shown on the Policy Schedule.

We will not pay Residual Disability or Recovery benefits beyond the later of:

   a.  Your 65th birthday; or
   b.  The date on which 24 months of Disability benefits have been paid.

# PART 2
# BENEFITS

The monthly benefits payable under this Policy are subject to the terms of Part 9 "Claims".

## 2.1   TOTAL DISABILITY BENEFIT

We will periodically pay a Total Disability benefit during Your Total Disability. The monthly amount We will pay is the Maximum Monthly Amount.   It is shown on the Policy Schedule.

This benefit will begin on the Commencement Date. We will continue to pay it while You remain Totally Disabled. But in no event will We pay beyond the Maximum Benefit Period. For periods of less than a month, We will pay 1/30th of the benefit for each day of Total Disability.

## 2.2   RESIDUAL DISABILITY BENEFIT

We will periodically pay a Residual Disability benefit during Your Residual Disability.

The monthly amount We will pay equals:

$$\frac{\text{Loss of Earnings}}{\text{Prior Earnings}} \quad \text{X} \quad \text{Maximum Monthly Amount}$$

During any Disability each of the first 6 monthly payments of this benefit will not be less than 50% of the Maximum Monthly Amount.

The benefit will begin on either the Commencement Date or the day after Your Total Disability ends, if later. We will pay this benefit while Your Residual Disability continues, but not beyond the Maximum Benefit Period.  For periods of less than a month, We will pay 1/30th of the benefit for each day of Residual Disability.

**"Loss of Earnings"** for any month means Your Prior Earnings minus Your Monthly Earnings for the month for which a benefit is claimed.  This difference will be considered Loss of Earnings to the extent it is due to the Injury or Sickness which caused the Disability.  The Loss of Earnings must be at least 20% of Prior Earnings.

If the Loss of Earnings for any month is 75% or more of Prior Earnings, We will deem the loss to be 100% of Prior Earnings.

*What is the Total Disability benefit?*

*When is the Residual Disability benefit payable?*

*How is the Residual Disability benefit calculated?*

**"Prior Earnings"** means the greater of:

    a.  Your average Monthly Earnings for the year just before Your Disability began; or

    b.  Your highest average Monthly Earnings for any 2 successive years during the 5 year period just before Your Disability began.

Starting as of the first Review Date, We will make an inflation adjustment to Your Prior Earnings. We will multiply Your Prior Earnings by the CPI Factor. The result will be used until the next Review Date to compute Residual Disability benefit amounts payable. However, the inflation adjustment increase will be at least 7% of Your Prior Earnings amount.

The inflation adjustment will not apply once the Disability ends. But it will apply to recurrent Disability deemed continuing under the Recurrent Disability section of Your Policy.

**"CPI"** means the Consumer Price Index for All Urban Consumers. It is published by the United States Department of Labor. If this index is discontinued or if the method for computing it is materially changed, We may choose another index. We will choose an index which in Our opinion would most accurately reflect the rate of change in the cost of living in the United States. CPI will then mean the index We chose.

**"Review Date"** means the date that occurs:

    a.  After each successive 12 months of Disability; and

    b.  While Your Disability continues.

No Review Date will occur on or after Your 65th birthday.

**"Index Month"** means the calendar month four months prior to the calendar month in which a Review Date occurs. But the first Index Month for any Disability will be the calendar month 4 months prior to the month in which Your Disability began.

**"CPI Change"** means the result of a computation We will make as of each Review Date. We will divide the CPI for the most recent Index Month by the CPI for the Index Month prior to the most recent Index Month.

**"CPI Factor"** means the result of the CPI Change as of the current Review Date multiplied by the CPI Change for each prior Review Date occurring since the Disability began. The CPI Factor as of the first Review Date will equal the CPI Change as of that Review Date. A CPI Factor is determined as of each Review Date while Disability continues.

**"Monthly Earnings"** means Your salary, wages, commissions, bonuses, fees, and income earned for services performed. If You own any portion of a business or profession, it means:

    a.  Your share of the income earned by that business or profession;

    b.  Less Your share of business expenses which are deductible for Federal income tax purposes;

    c.  Plus Your salary and any contributions to a pension or profit sharing plan made on Your behalf.

Monthly Earnings does not include:

    a.  Income from deferred compensation plans, disability income policies, or retirement plans; or

    b.  Income not derived from Your vocational activities.

We will allow either the cash or accrual accounting method. But during a Disability the same method must be used when determining Loss of Earnings.

### 2.3    RECOVERY BENEFIT

We will periodically pay a Recovery benefit during Your Recovery.   The monthly amount We pay will be calculated as if You were Residually Disabled.

This benefit will begin on the day after Your Total or Residual Disability ends. We will continue to pay this benefit while Your Recovery continues. We will not pay beyond the end of the Maximum Benefit Period.

### 2.4    PRESUMPTIVE TOTAL DISABILITY BENEFIT

If Injury or Sickness causes You to totally and irrecoverably lose:

    a.    Your power of speech; or
    b.    Your hearing in both ears; or
    c.    Your sight in both eyes; or
    d.    Use of both hands; or
    e.    Use of both feet; or
    f.    Use of one hand and one foot;

We will presume You to be Totally Disabled as long as such loss continues and whether or not You are able to work or require Physician's Care.

The Total Disability benefit will begin on the date of the above loss. We will pay it for the amount and Maximum Benefit Periods shown on the Policy Schedule. But We will pay benefits for Your lifetime if; a) the Maximum Benefit Period is "to age 65" or "lifetime"; and b) such loss occurs prior to age 65.

### 2.5    TOTAL DISABILITY BECAUSE OF COSMETIC OR TRANSPLANT SURGERY

After 6 months from the Date of Issue, if You become Totally Disabled because You have surgery to:

    a.    Improve Your appearance or prevent disfigurement; or
    b.    Transplant part of Your body to someone else;

We will consider You to be Totally Disabled due to Sickness.

---

*Can benefits be paid if not Disabled?*

*Can Total Disability be automatically assumed?*

*Is cosmetic or transplant surgery covered?*

---

### 2.6   REHABILITATION

We will pay for the cost of services incurred in connection with a program of vocational rehabilitation if:

*What happens if a program of retraining or rehabilitation is entered?*

    a.   We enter into an agreement with You on both the program and the services; and

    b.   The cost of the services is not covered by another plan or program.

Participating in such a program will not affect Your eligibility for benefits under Your Policy.

### 2.7   SURVIVOR BENEFIT

*Is there a benefit if You die?*

If You die after the Commencement Date and prior to age 65, and while You are eligible for Total Disability benefits, We will pay to Your beneficiary 3 times the Maximum Monthly Amount payable at the time You die. Your beneficiary will be Your estate. But You may name someone else by writing to Us.

## PART 3
## EXCLUSIONS

### 3.1   EXCLUSIONS

*When are you not covered?*

We will not pay Policy benefits:

    a.   Due to an act or accident of war, whether declared or undeclared; or

    b.   Due to normal pregnancy or childbirth except as described in the definition of Sickness; or

    c.   For any period You are incarcerated.

### 3.2   PRE-EXISTING CONDITION

*What if a disability results from a Pre-existing Condition?*

During the first two years from the Date of Issue, We will not pay benefits for a Pre-Existing Condition if it was not disclosed on Your application.  Pre-Existing Condition means any condition that was diagnosed or treated by a Physician within 24 months prior to the Date of Issue or produced symptoms within 12 months prior to the Date of Issue that would have caused an ordinarily prudent person to seek medical diagnosis or treatment.

Also We will not pay benefits for any loss We have excluded by name or specific description.

**PART 4**
**PREMIUM AND REINSTATEMENT**

**4.1    PAYMENT OF PREMIUM**

The first premium on Your Policy is payable on the Date of Issue. After that, premiums are payable in the amount and mode shown on the Policy Schedule. Payments may be made at Our Home Office, 501 Boylston Street, Boston, Massachusetts 02116-3600, or to Our agent.

Premiums may be paid annually or semi-annually. If Our rules permit it, You can pay the premiums quarterly or monthly. We will allow You to change this by written request. But, We will not allow a change while You are Disabled.

*When are premiums due?*

**4.2    GRACE PERIOD**

After the first premium has been paid, a grace period of 31 days is allowed for late payment of premium. Your Policy will remain in force during the grace period.

If the premium is not paid when it is due or within the grace period, the Policy will lapse.

*What happens if a premium payment is late?*

**4.3    REINSTATEMENT**

If Your Policy lapses because the premium is not paid when due or within the grace period, it will be reinstated if We or Our agent accepts payment of the premium without requiring a reinstatement application.

If We receive the premium due at Our Home Office within 57 days from the date the premium was due, We will not require evidence of Your insurability.

If We receive the premium after 57 days, We will require a reinstatement application. We will issue You a conditional receipt for the premium. If We approve Your application, the Policy will be reinstated as of the date of Our approval. If We disapprove Your application, We must do so in writing within 45 days of the date of the conditional receipt or the Policy will be reinstated on the 45th day.  The reinstated Policy will cover only loss due to:

*How can a lapsed Policy be reinstated?*

    a.    Injury sustained after the date of reinstatement; or
    b.    Sickness that begins more than ten days after such date.

Except for this and any new provisions that are added to the reinstated Policy, Your rights and Our rights will be the same as before the Policy lapsed.

**4.4    PREMIUM REFUND AT DEATH**

Upon notice of Your death, We will make a pro rata refund of any premium actually paid for a period beyond the date of Your death.

*Is there any premium refund at death?*

# PART 5
# WAIVER OF PREMIUM

## 5.1   WAIVER OF PREMIUM

*When will premiums be waived?*

After You have been Disabled for 90 days, We will waive any premium that becomes due while You remain Disabled. Your Policy and its benefits will continue as if the premium had been paid.

We will also refund any premium paid that became due during those first 90 days of Disability.

When You are no longer eligible for Waiver of Premium, You can continue Your Policy in force by paying the next premium that becomes due.

Waiver of Premium will not apply to any premiums which become due after You elect the RENEWAL OPTION IF NOT EMPLOYED. HOSPITAL CONFINEMENT INDEMNITY BENEFIT in PART 8.

# PART 6
# RECURRENT AND CONCURRENT DISABILITY

## 6.1   RECURRENT DISABILITY

a.   For Maximum Benefit Periods "To Age 65" and "Lifetime":

*What if a disability reoccurs?*

If after the end of a Disability You become Disabled from the same or related causes, We will deem it a separate Disability. But if such recurrence occurs within 12 months of the end of the prior period, We will deem it a continuation of the prior Disability.

Such periods of Recurrent Disability separated by 12 months or less will be deemed to be continuing in order to determine the Commencement Date. Such periods of Recurrent Total Disability separated by 12 months or less will be deemed to be continuing in order to determine completion of the Qualification Period, if any.

b.   For All Other Maximum Benefit Periods:

If after the end of a disability You become Disabled from the same or related causes, We will deem it a separate Disability. But if such recurrence occurs within 6 months of the end of the prior period, We will deem it a continuation of the prior Disability.

Such periods of Recurrent Disability separated by 6 months or less will be deemed to be continuing in order to determine the Commencement Date.  Such periods of Recurrent Total Disability separated by 6 months or less will be deemed to be continuing in order to determine completion of the Qualification Period, if any.

*What if a disability is due to more than one cause?*

## 6.2   CONCURRENT DISABILITY

If a Disability is caused by more than one Injury or Sickness, or from both, We will pay benefits as if the Disability was caused by only one Injury or Sickness.

We will not pay more than one Disability benefit for the same period. We will always pay the largest benefit.

990                                                   -13-

## PART 7
## RENEWAL OPTION IF EMPLOYED. TOTAL DISABILITY
## BENEFIT — LIMITED BENEFIT PERIOD

### 7.1    RENEWAL OPTION

After Your 65th birthday You may continue Your Policy for the Total Disability benefit while:

    a.   You remain actively and regularly employed full time for at least 30 hours per week; and
    b.   The premium is paid on time.

We can require proof after Your 65th birthday that You have continued to be actively and regularly employed full time.

You cannot elect this option after the RENEWAL OPTION IF NOT EMPLOYED. HOSPITAL CONFINEMENT INDEMNITY BENEFIT in PART 8 becomes effective.

The Policy must be in force when You elect this option.

### 7.2    TOTAL DISABILITY BENEFIT — LIMITED BENEFIT PERIOD

If You elect this option, We will pay the Total Disability amount subject to the same provisions, exceptions, and limitations in the Policy.

For Total Disability starting:

a.   After Your 65th birthday, but before Your 75th birthday, the Maximum Benefit Period will be 24 months or the period shown on the Policy Schedule if less; and
b.   After Your 75th birthday, the Maximum Benefit Period will be 12 months.

### 7.3    PREMIUMS

The premium will be the rate then in effect for Your rating group.  We can change the premium rate but only if We change the rate for everyone who has this policy form in Your rating group in Your state.

Any premium paid after Your 65th birthday for a period not covered by Your Policy under this option will be returned to You. Or at Your request, We will apply it to the premium payable under the RENEWAL OPTION IF NOT EMPLOYED. HOSPITAL CONFINEMENT INDEMNITY BENEFIT in PART 8.

---

*Can the Policy be renewed after age 65 if You are still working?*

*How will the benefit period be limited?*

*What will the premium be?*

---

## PART 8
## RENEWAL OPTION IF NOT EMPLOYED.
## HOSPITAL CONFINEMENT INDEMNITY BENEFIT

### 8.1    RENEWAL OPTION

*Can the Policy be renewed after age 65 if not working?*

When You are no longer actively and regularly employed after Your 65th birthday You may continue Your Policy for the rest of Your life, as long as the premium is paid on time. The benefit will be limited to a Hospital Confinement Indemnity. This benefit will take the place of all other benefits under Your Policy and, unless We state otherwise, any benefits under riders added to the Policy.

The Policy must be in force when You elect this option.

### 8.2    HOSPITAL CONFINEMENT INDEMNITY BENEFIT

*What will the benefit be?*

If You elect this option, We will pay You a Hospital Confinement Indemnity of 100 dollars per day while You are confined in a legally operated hospital because of Injury or Sickness.

This benefit will begin on the date You are confined. We will continue to pay it while You are confined. But We will not pay for more than 6 months during each continuous confinement.

For the purpose of this benefit, after a period of confinement ends and You are confined again from the same or related cause within 180 days, We will consider it to be a continuation of the first confinement.

For the purpose of this benefit, "hospital" will <u>not</u> mean:

    a.  A place of convalescence, nursing home care, or care for the aged; or

    b.  A place for the care or treatment of mental disorders, drug addiction, or alcoholism; or

    c.  A place that is used primarily for custodial, educational, or rehabilitative care.

### 8.3    EXCEPTIONS

*What other Policy provisions will change?*

Under this option, the Waiver of Premium, the Recurrent Disability, and Benefit provisions of the Policy will not apply. However, all of the other provisions, exceptions, and limitations in the Policy will apply.

### 8.4    PREMIUMS

*What will the premium be?*

The premium will be the rate then in effect for Your rating group. We can change the premium rate but only if We change the rate for everyone who has the policy form in Your rating group in Your state.

## PART 9
## CLAIMS

### 9.1    TIME OF LOSS

All losses must occur while Your Policy is in force. But, termination of Your Policy will not affect any claim for Total Disability that begins within 30 days of the date of an Injury causing such Disability.

*When must losses occur?*

### 9.2    WRITTEN NOTICE OF CLAIM

Written notice of claim must be given to Us within 30 days after a covered loss starts. If this cannot be done, then notice must be given as soon as reasonably possible.

The notice will be sufficient if it identifies You and is sent to Our Disability Income Administration Center, 18 Chestnut Street, Worcester, Massachusetts 01608, or is given to Our agent.

*When must written notice be given?*

### 9.3    CLAIM FORMS

After We receive the written notice of claim, We will send You Our proof of loss forms within 15 days. If We do not, You will meet the written proof of loss requirements if You send Us, within the time set forth below, a written statement of the nature and extent of Your loss.

*Is there a form for proof of loss?*

### 9.4    WRITTEN PROOF OF LOSS

Written proof of loss must be sent to Us within 90 days after the end of each period for which You are claiming benefits. If that is not reasonably possible, Your claim will not be affected. But, unless You are legally incapacitated, written proof must be given within one year of the date it was required.

We can also require reasonable proof from You of Your:

   a.   Prior Earnings; and
   b.   Monthly Earnings for the month for which Disability is claimed.

This may include personal and business tax returns filed with the Internal Revenue Service, financial statements, accountant's statements or other proof acceptable to Us or which We may require. We can have an audit performed as often as is reasonably required while Your claim is continuing. Such an audit will be at Our expense.

*What types of proof of loss might be required?*

### 9.5    EXAMINATIONS

At Our expense, We can have a Physician of Our choice examine You as often as reasonably required while Your claim is continuing.

### 9.6    TIME OF PAYMENT OF CLAIMS

After We receive satisfactory written proof of loss:

   a.   We will pay any benefits then due that are not payable periodically; and
   b.   We will pay at the end of each 30 days any benefits due that are payable periodically — subject to continuing proof of loss.

We will pay You interest at the rate of 8 percent per year on the benefits due under the terms of the Policy if We fail to comply with a. and b. above.

*Can there be an independent exam performed?*

*When will benefits be paid?*

**9.7    PAYMENT OF CLAIMS**

To whom will benefits be paid?

All benefits will be paid to the Policy Owner named on the Policy Schedule. If any benefit is payable to Your estate or if You are not competent to give a valid release, We can pay up to 1,000 dollars to one of Your relatives who We believe is entitled to it. If We do that in good faith, We will not be liable to anyone for the amount We pay.

**9.8    ASSIGNMENT**

When must notice of an assignment be sent?

We will not be bound by an assignment of Your Policy or any claim unless We receive a written assignment at Our Disability Income Administration Center before We pay the benefits claimed. We will not be responsible for the validity of any assignment.  An absolute assignment is a change of Policy Owner to the assignee.  A collateral assignment is not a change of Policy Owner; in this case benefits will be paid jointly to the Policy Owner and the assignee.

**9.9    MISSTATEMENT OF AGE**

What if there is a misstatement of age?

If Your age has been misstated, the benefits under the Policy will be those that the premium You paid would have purchased at Your correct age.

# PART 10
# THE CONTRACT

**10.1    ENTIRE CONTRACT; CHANGES**

Can the Policy be changed?

This Policy (with the application and attached papers) is the entire contract between You and Us.  No change in this Policy will be effective until approved by a Company officer.  This approval must be noted on or attached to this Policy.  No agent may change this Policy or waive any of its provisions.

**10.2    INCONTESTABLE**

For how long is the Policy contestable?

a.   After Your Policy has been in force for 2 years, excluding any time You are Disabled, We cannot contest the statements in the application.

b.   No claim for loss incurred or Disability that starts after 2 years from the Date of Issue will be reduced or denied because a sickness or physical condition not excluded by name or specific description before the date of loss had existed before the Date of Issue.

**10.3    CONFORMITY WITH STATE STATUTES**

What if the Policy differs with state requirements?

Any provision in this Policy which, on its Date of Issue, conflicts with the laws of the state in which You reside on that date is amended to meet the minimum requirements of such laws.

**10.4    LEGAL ACTION**

When can legal action be brought under this Policy?

You cannot bring legal action within 60 days from the date written proof of loss is given. You cannot bring it after 3 years from the date written proof of loss is required.

## FUTURE INCOME OPTION BENEFIT RIDER

**DEFINITIONS.** In this Rider:

"**Policy Benefit**" means the Maximum Monthly Amount payable under Your Policy to which this Rider is added. That amount is shown on the Policy Schedule.

"**Option Date**" means each even-numbered anniversary of the Date of Issue that occurs on or before the Expiration Date.

"**Unit of Increase**" is an amount by which the Policy Benefit can be increased on an Option Date. That amount is shown on the Policy Schedule. The maximum number of Units of Increase is also shown on the Policy Schedule.

"**Expiration Date**" is the date this Rider ends. That date is shown on the Policy Schedule.

"**Earned Income**" means the greater of Your average Monthly Earnings for:
1. The year just before the date of Your request for an increase in the Policy Benefit; or
2. Any two successive years during the five-year period just before the date of Your request.

All definitions in Your Policy apply to this rider. All provisions of Your Policy stay the same except where We change them by this rider.

## FUTURE INCOME OPTION BENEFIT.

You may apply for up to one Unit of Increase as of any Option Date. You may apply for part of a Unit of Increase as of any Option Date.

If all or part of a Unit of Increase is not used as of an Option Date, You may carry it over and apply for it on the next Option Date. But You cannot carry it over beyond that Option Date.

On any Option Date prior to age 42, You may also apply for up to one added Unit of Increase if You are not Disabled and You exercise all of Your current Unit of Increase. This added Unit of Increase may not be exercised more than once.

To use all or part of a carried-over Unit of Increase You must also exercise all of Your current Unit of Increase. The total number of Units of Increase exercised can never exceed the maximum number of Units of Increase shown on the Policy Schedule.

If You qualify, We will increase Your Policy Benefit by the amount for which You apply.

## TO QUALIFY FOR AN INCREASE.

You will qualify for an increase if, at the time You apply:

1.  Your Earned Income is sufficient for an increase. This will be determined by Our published underwriting rules and issue and participation limits in effect at the time You apply; and
2.  The sum of all of Your disability income coverage, after the increase, is not more than the maximum coverage We offer to new applicants of Your class of risk. This will be determined by Our published underwriting rules and issue and participation limits in effect at the time You apply. We will figure the sum of Your disability income coverage by adding up the benefits You would receive from:
    a.  Us; and
    b.  Any other insurer; and
    c.  Any government agency.

We may require proof of Your Earned Income. This could include tax returns or other proof which We may require.

## APPLICATION FOR AN INCREASE.

You may apply for an increase as of any Option Date. We will send You an application form. This form must be completed and returned to Us within 60 days before the Option Date. This form will ask You for a statement of Your Earned Income and disability income coverage. This form will not ask You for proof of good health.

You may apply for no more than one Unit of Increase during any continuing disability.

## WHEN AN INCREASE IS PAYABLE.

An increase in Your Policy Benefit under this rider will be effective as of the applicable Option Date. But if the Option Date upon which an increase is elected occurs while You are disabled, We will begin to pay the increased Policy Benefit on the ninety-first day of continuous disability after that Option Date. We will pay the increased Policy Benefit while Your disability continues and while the Policy Benefit is payable.

## THE PREMIUM.

The premium for each increase will be at the rate for Your age at Your nearest birthday on the applicable Option Date. We will figure this according to either:

1.  Your class of risk when We issued Your Policy; or
2.  Your class of risk on the Option Date of the increase;

whichever is more favorable to You.

Also, if the premium for Your Policy is being waived on the Option Date, You will not have to pay the premium for the increase until the premium for Your Policy becomes payable again.

You must make the first payment of the premium for an increase to Our Home Office or to Our agent. This must be done no later than 31 days after the Option Date.

**TERMINATION.**

This rider will end when one of the following happens:

1. The Expiration Date for this rider; or
2. When the total of all increases in the Policy Benefit equals the value of the maximum Units of Increase shown on the Policy Schedule; or
3. A premium for the Policy or this rider is not paid on time; or
4. Upon Your written request to end this rider. In that case, You must return the Policy to Us. We will make the proper endorsement and return the Policy to You.

The annual premium for this Rider is shown in the Policy Schedule.

The premium charge for this Rider will end when the Rider ends.

The Date of Issue of this Rider is the same as that of Your Policy. If We issued this Rider after Your Policy, the Date of Issue is shown on the Policy Change form issued with this Rider.

Signed for Us at Worcester, Massachusetts.

NEW ENGLAND MUTUAL LIFE INSURANCE COMPANY

Secretary                    Chief Executive Officer

H875                          -3-                          91-1

MSA# 2000289373

**APPLICATION FOR
DISABILITY INSURANCE TO:**

# NEW ENGLAND MUTUAL
# LIFE INSURANCE COMPANY

| 1a. Name (Print): Menotti Ralph | | b. Soc. Sec. # 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 |
|---|---|---|
| (Incln. Prof. Title)     Last     First     MI | | c. Ht. 5'10   d. Wt. 190 |
| e. Sex M ☒ F ☐ | f. Birthdate: 10-24-59   g. Age (nearest): 32 | h. Birthplace (State)   IL |

i. Residence Address: 429 S Pershing DR Mundelein Il 60060 (708) 949-4841
   Street   Apt/# City   State   Zip   Phone

j. Business Address: 30 N Wacker Chicago IL 60606 (312) 930-1000

2a. Occupation: Trader   b. Employer: Self

c. Exact duties: Trade Euro dollars

d. Length of current employment: 5 1/2 yrs   e. Nature of Employer's business: Trades commodities

f. If owner, percentage owned: 100%   Length of Ownership: 2 1/2 yrs   # full time employees: 1

g. Type of Business Entity: Sole Proprietor ☒ Partnership ☐ Corporation ☐ Other ☐ describe:

---

3. Have you within the past **2 years** engaged in motorcycle riding, scuba diving, racing or any similar sport or avocation?
   Yes ☐ No ☒ If "Yes", give details: _____

4. Have you smoked cigarettes in the past **12 months**?   Yes ☒ No ☐

5. Have you been actively at work full-time for the past **6 months**?   Yes ☒ No ☐
   If "No", give details:

**Questions 6 and 7 need not be answered if a Medical Exam is required.**

6. Have you **ever** been treated for or had any known indication of: (Circle all conditions that apply and give details below)
   a. Chest pain, high blood pressure, mental or emotional disorder, arthritis, diabetes, cancer, tumor,
      or fainting spells?   Yes ☐ No ☒
   b. Disease or disorder of the heart or circulatory system, lungs, kidneys, bladder, genital or reproductive organs,
      brain or nervous system, skin, eyes, ears or speech?   Yes ☐ No ☒
   c. Disease or disorder of the stomach or intestines, liver, thyroid, bones, muscles, joints, back or neck?   Yes ☐ No ☒
   d. Complications of pregnancy? Yes ☐ No ☒   Are you currently pregnant? Yes ☐ No ☒ Due date: _____

7. In the past **5 years**, have you had any medical advice or operation, physical exam, treatment, illness, abnormality or injury
   not listed above? Yes ☐ No ☒   Are you currently receiving any medical advice or treatment? Yes ☐ No ☒

8. Have you **ever** used stimulants, hallucinogens, narcotics or any controlled substance other than prescribed by a physician,
   or been counseled or treated for excess use of alcohol or drugs?   Yes ☐ No ☒

9. Give details to all "Yes" answers to **6, 7** or **8**. Include exact diagnoses, dates, duration, physicians and addresses.
   _____
   _____
   _____

10. In the past **5 years** have you had any insurance application rejected or modified or received or been refused any disability
    or medical benefits? Yes ☐ No ☒ If "Yes", give details: _____

| 11. Fill in amounts as Reportable for Federal Tax purposes | Estimated Current Annual Rate | Actual Last year 19 90 | Actual 2 Years Ago 19 89 |
|---|---|---|---|
| a. Salary, Fees, Commissions & Bonus | $ 300,000 | $ 205,000 | $ 50,000 |
| b. Pension and Profit Sharing Contributions | | | |
| c. Earnings from other occupations (describe): | | | |
| d. Total Earnings (a + b + c) | | | |
| e. Deductible Business Expenses | | | |
| f. NET EARNED INCOME (d − e) | | | |

12. List Net worth (assets minus liabilities), if more than $750,000: $_____

13. List unearned income (interest, dividends, capital gains, rent, etc.), if more than $15,000 per year: $_____

89-12
01-903

14. Describe all disability coverage in force, and all coverage applied for in the past 12 months. Indicate if it is:
A) Individual, B) Social Security Substitute, C) Association, D) Group, E) Salary Continuation, F) Overhead Expense, or
G) Buy-Out. If none, write "none".

| Company or Source If The New England, give Pol. # If pending, check | Type (A,B,C, etc.) | Monthly Amount | Elim. Period | Benefit Period | Will coverage be Replaced/Changed or Madeover? | Effective Date of Discontinuance |
|---|---|---|---|---|---|---|
| | | | | | Yes ☐ No ☐ | |
| NON E | | | | | Yes ☐ No ☐ | |
| | | | | | Yes ☐ No ☐ | |
| | | | | | Yes ☐ No ☐ | |

15. Describe Coverage Being Requested (If BOE, complete supplement):

| Plan Code: 990 | Monthly Amt. | Elim. Period | Benefit Period | Form # | Optional Benefits Amount | Form # | Amount |
|---|---|---|---|---|---|---|---|
| Base | 4800 | 90 | L65 | 875 | 500 | | |
| AMI | | | | A1B | 5% | | |
| AMI | | | | | | | |
| SSIB | | | | | | | |

16. a. Will requested coverage be paid for by employer? Yes ☐ No ☒ If "Yes", how much? _____ %
   Will employer's contribution be included in your taxable income? Yes ☐ No ☒
   b. List name and address of proposed owner if other than proposed insured _____

   c. Send notices to:    Residence ☒    Business ☐
   d. Collected with this application in exchange for Conditional Receipt: $219 47

---

## CORRECTIONS AND AMENDMENTS (For Company Use Only)

#15 60/65 BP.

---

It is understood and agreed as follows:
(1) I have read the statements and answers recorded above. They are, to the best of my knowledge and belief, true and complete and correctly recorded. They will become part of this Application and the basis for any policy issued on it.
(2) I will permanently discontinue all policies shown to be discontinued in answer to question 14 on or before the dates indicated. If not, benefits under any policy issued on this application may be reduced by the amount payable under such existing policies.
(3) No agent or broker has authority to waive the answer to any question, to determine insurability, to waive any of the Company's rights or requirements, or to make or alter any contract or policy.
(4) The insurance applied for will not take effect unless the issuance and delivery of the policy and payment of the first premium occur while the health of the Proposed Insured remains as stated in the Application. The only exception to this is the insurance provided in the Conditional Receipt detached herefrom and issued if at least the Minimum Deposit is made with the Application.
(5) Acceptance by the Proposed Insured/Owner of any policy issued on this Application will ratify any changes listed under "Corrections and Amendments", except that no changes may be made as to Classification, Age at Issue, Form of Insurance, Amount or Benefits unless agreed to in writing by the Proposed Insured/Owner.

Signed at _Mundelein IL_    Date _1-14-92_    19_91_

I certify that I have truly and accurately recorded on this application the information supplied by the Proposed Insured.

X _Ralph Mundt_
Signature of Proposed Insured

Witness _Glynn Kunarek_
Licensed Agent or Broker

X _____
Signature of Proposed Owner (if applicable)

**Applicants will be informed whether or not their application has been accepted within 60 days or be given the reason for any further delay.**

Countersigned at

_____

this_____day of_____

_____
Licensed Resident Agent

NON-PARTICIPATING
DISABILITY INCOME POLICY
THE PREFERRED PROFESSIONAL

<u>NOTICE</u>

We are pleased to advise that if you have any complaint concerning your policy of insurance, please contact the Complaint Department of the Company at 18 Chestnut Street, Worcester, Massachusetts 01608, or the Public Service Division of the Illinois Insurance Department at 320 West Washington Street, Springfield, Illinois 62767.

M134

92-4

**NOTICE:    READ THIS OUTLINE OF COVERAGE CAREFULLY.  It is not the same as the outline of coverage given to you upon application because you have not been issued the coverage for which you first applied.**

# NEW ENGLAND MUTUAL LIFE INSURANCE COMPANY
## DISABILITY INCOME ADMINISTRATION CENTER
18 Chestnut Street, Worcester, MA 01608
### DISABILITY INCOME PROTECTION COVERAGE
### REQUIRED OUTLINE OF COVERAGE
### (Policy Form 990 IL)

**(1) READ YOUR POLICY CAREFULLY.** This outline of coverage provides a very brief description of some of the important features of your policy. This is not the insurance contract and only the actual policy provisions will control. The policy itself sets forth, in detail, the rights and obligations of both you and your insurance company. It is, therefore, important that you READ YOUR POLICY CAREFULLY!

**(2)** Disability income protection coverage is designed to provide you with coverage for disabilities resulting from a covered accident or sickness. Coverage is provided for the benefits outlined in Paragraph (3). The benefits described in Paragraph (3) may be limited in Paragraph (4).

**(3) BENEFITS**

(a) Basic Policy

Your policy insures you against loss of earned income. We will pay you the amount shown on the attached Policy Schedule per month if you are *totally disabled* before age 65. This means you are sick or injured and under a physician's care. It means you can't do the important duties of your regular occupation.

**If page 6 of your policy bears the form number "990IL AO", the following language also applies to the definition of total disability: Total disability also means you are not working in another gainful occupation.  If page 6 of your policy bears the form number "990IL YO", this additional language DOES NOT APPLY.**

If you retire prior to age 65, then total disability shall mean you are completely unable to engage in the normal activities of a retired person of like age and good health. If you retire prior to age 65, then this definition remains in effect until your 65th birthday.

We will begin to pay you this benefit from the day shown on the attached Policy Schedule that you are totally disabled. This is the commencement date for total disability benefit.

We will pay you this benefit for the period shown on the attached Policy Schedule while you are totally disabled from sickness or injury. But for any maximum benefit period other than lifetime, we will not apply this benefit after you reach age 65, unless you become totally disabled after age 63. Then we will pay it for the period of time shown on the Policy Schedule.

Your policy also pays a monthly benefit if you become residually disabled before age 65. Prior to the commencement date, this means that due to injury or sickness you 1) are receiving a physician's care; and 2) are unable to do one or more of your important duties *or* are unable to do all of your important duties for more than 80% of the time. After the commencement date, item 2 does not apply but you must show a loss of earnings of at least 20%. If your qualification period is greater than zero, you must first be totally disabled for the number of days shown on the Policy Schedule to qualify for this partial benefit.

The amount of this residual benefit relates to how much of your monthly earnings you lose because of the partial disability. For example, if your monthly earnings are half of what you averaged before the disability, then we will pay you half of the total disability benefit as a residual benefit. After you have been continuously disabled for a year and while your disability continues, we will make an annual inflation adjustment increase to your average monthly earnings before you became disabled for purposes of calculating your residual benefit. We will use the Consumer Price Index to make this adjustment. However, each inflation adjustment increase will be at least 7%.

We will pay this residual benefit while your residual disability continues but not beyond the benefit periods discussed above. Also, we will not pay this residual benefit beyond the later of your 65th birthday, or the date on which 24 months of benefits have been paid.

## METROPOLITAN LIFE INSURANCE COMPANY

### ENDORSEMENT

Endorsement Date:

As of the Endorsement Date, the following changes are made:

The contract or certificate to which this is attached was issued in the name of The New England Mutual Life Insurance Company ("The New England"). That company has merged with Metropolitan Life Insurance Company ("MetLife"). MetLife has assumed by operation of law all duties, liabilities and responsibilities under the contract or certificate as fully as though it had been issued in the name of MetLife instead of The New England.

You should continue to use the same telephone numbers and addresses as before to send in requests, ask questions or otherwise receive service under the contract or certificate unless we have asked you to use different ones.

If the contract or certificate allowed you to vote for The New England's Board of Directors, you may now vote for MetLife's Board of Directors. For details on how to vote, write to our Secretary at Metropolitan Life Insurance Company, One Madison Avenue, New York, N.Y. 10010-3690.

Harry P. Kamen
Chairman, President and Chief Executive Officer

Christine N. Markussen
Vice-President and Secretary

P-1181-96