**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| RALPH MENOTTI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 08 C 2767 |
| | ) | |
| THE METROPOLITAN LIFE INSURANCE COMPANY, | ) | Judge Nan R. Nolan |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Ralph Menotti has filed a three-count complaint against Metropolitan Life Insurance Company ("MetLife") seeking to recover benefits allegedly owed to him under a disability insurance policy. The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c), and MetLife now moves to dismiss Count II of the complaint for failure to state a claim. FED. R. CIV. P. 12(b)(6). For the reasons set forth below, the motion is granted.

**BACKGROUND**[1]

MetLife, a New York corporation with its principal place of business in New York, New York, is an insurance company providing disability insurance. Menotti is a resident of Vernon Hills, Illinois who worked as a commodities broker, performing open outcry trading with the Chicago Mercantile Exchange ("CME"). (SAC ¶¶ 2, 3, 7.)[2] On January 15, 1992, Menotti procured a disability insurance policy (the "Policy") through New England Mutual Life Insurance Company, which is now part of MetLife. The Policy defines "Total Disability" to mean: (1) "You are unable to perform the important duties of Your Occupation; and (2) You are not engaged in any other gainful occupation;

---

[1] In reviewing this motion to dismiss, the court accepts all well-pleaded factual allegations in the complaint. *Richards v. Kiernan*, 461 F.3d 880, 882 (7th Cir. 2006).

[2] Plaintiff's Second Amended Complaint at Law is cited as "SAC ¶ __."

and (3) You are receiving Physician's Care." (Policy, Ex. A to SAC, at 6.) Years later, on November 23, 2005, Menotti sustained personal injuries in a motor vehicle accident. (SAC ¶¶ 4, 6.)

### A. Menotti's Disability Claim

On May 1, 2006, Menotti submitted an Income Protection Claim to MetLife, asserting that he was disabled and had been unable to perform the functions of his job as a commodities broker with the CME since March 20, 2006. When Menotti formally left his position on July 30, 2006, MetLife started paying him a monthly disability benefit of $5,550, dating back to June 2006. (*Id.* ¶¶ 7-9.) On December 18, 2007, however, MetLife sent Menotti a letter stating that it was ceasing his disability benefits because he was no longer disabled within the meaning of the Policy. Menotti appealed this determination on March 3, 2008, but MetLife denied the appeal on March 8, 2008. (*Id.* ¶¶ 10, 13, 14.) Menotti insists that he remains disabled within the terms of the Policy and is entitled to his full benefits. (*Id.* ¶¶ 11, 12, 16, 17.)

### B. Menotti's Lawsuit

Menotti filed this lawsuit on May 13, 2008, asserting claims under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.* Upon discovering that the Policy is not an ERISA plan, Menotti amended his suit to allege breach of contract (Count I), anticipatory breach of contract (Count II), and breach of the Illinois Insurance Code (Count III). This court has diversity jurisdiction over these claims under 28 U.S.C. § 1332(a). MetLife answered Counts I and III on March 3, 2009, but simultaneously moved to dismiss Count II for failure to state a claim.

## DISCUSSION

The purpose of a motion to dismiss is to test the sufficiency of the plaintiff's complaint, not to decide its merits. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). A motion to dismiss will be granted only "if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which entitles him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

In reviewing a motion to dismiss for failure to state a claim, the court accepts as true all factual allegations in the plaintiff's complaint and draws all reasonable inferences in his favor. *Franzoni v. Hartmarx Corp.*, 300 F.3d 767, 770 (7th Cir. 2002).

In Count II of the complaint, Menotti seeks to recover a lump sum award of future disability benefits through age 65, on a theory of anticipatory repudiation. Specifically, Menotti alleges that MetLife has "unequivocally manifested its intention not to render performance under the [Policy]," and that he "is thus entitled to treat Defendant's repudiation of the [Policy] as a breach." (SAC ¶¶ 27, 28.) MetLife argues that Count II must be dismissed because (1) Menotti has not alleged facts demonstrating a clear repudiation of the Policy as required to state a claim for anticipatory breach of contract; and (2) it is preempted by § 155 of the Illinois Insurance Code, 215 ILCS 5/155. The court considers each argument in turn.

### A. Anticipatory Repudiation

The Illinois Supreme Court has held that "[t]he doctrine of anticipatory repudiation requires a clear manifestation of an intent not to perform the contract." *In re Marriage of Olsen*, 124 Ill. 2d 19, 24, 528 N.E.2d 684, 686 (1988). A dispute over contract interpretation does not suffice:

> Where the two contracting parties differ as to the interpretation of the contract or as to its legal effects, an offer to perform in accordance with his own interpretation made by one of the parties is not in itself an anticipatory breach. In order to constitute such a breach, the offer must be accompanied by a clear manifestation of intention not to perform in accordance with any other interpretation.

*Id.* (quoting 4 A. Corbin, Contracts § 973, at 911-12 (1951)). *See also Draper v. Frontier Ins. Co.*, 265 Ill. App. 3d 739, 745, 638 N.E.2d 1176, 1181 (2d Dist. 1994).

MetLife argues that Menotti has alleged only a dispute over the meaning and application of the definition of Total Disability under the Policy, and not a repudiation of the validity of the Policy itself. (Def. Mem., at 4.) In support of this position, MetLife directs the court to *Feliberty v. Unumprovident Corp.*, No. 03 C 7569, 2003 WL 22991859 (N.D. Ill. Dec. 16, 2003), in which the defendants sent the plaintiff letters stating that his disability coverage would end in 2005 "because

3

his disability is the result of sickness, not accidental injury." *Id.* at *3. The court held that these statements did not suggest that the defendants intended to perform only on their own terms. "Rather, the letters demonstrate a disagreement over the meaning of the insurance policies' compensation standards, not a clear rejection of the policies' validity." *Id.*

Count II of Menotti's complaint alleges that "it is clear that Defendant MetLife has unequivocally manifested its intention not to render performance under the [Policy]"; "Menotti does not have any reasonable expectations that Defendant will honor the terms of the [Policy]"; and "Menotti is thus entitled to treat Defendant's repudiation of the [Policy] as a breach." (SAC ¶¶ 27, 28.) Taken together, these statements suffice to allege that MetLife will not perform under the Policy under any circumstances. Significantly, neither party has provided any letters or documents reflecting MetLife's actual intentions in this case. *Cf. Feliberty*, 2003 WL 22991859, at *3 (letters stated only that coverage would end two years in the future); *Bituminous Cas. Corp. v. Commercial Union Ins. Co.*, 273 Ill. App. 3d 923, 931, 652 N.E.2d 1192, 1198 (1st Dist. 1995) (insurer's letter was a clear and unequivocal repudiation of its obligations under the insurance policy where it stated that insurer "did not have a duty to indemnify . . . in the event a verdict was returned against it" and "hereby declined coverage.")

Viewing the facts in a light most favorable to Menotti, Count II does state a claim for anticipatory breach of contract. *Franzoni*, 300 F.3d at 770.

**B.    Preemption**

MetLife argues in the alternative that Count II is preempted by § 155 of the Illinois Insurance Code. MetLife notes that Menotti's eligibility to receive disability benefits in the future will depend on whether he satisfies the Policy's three-pronged definition of Total Disability in the future, which is far from certain. For example, Menotti's disability could be resolved through new treatments; he might obtain other gainful employment; or he might not live to the age of 65. To the extent an award of benefits now would relieve Menotti of his obligation to satisfy the Policy's conditions

4

precedent, MetLife argues, he is seeking a punitive remedy for MetLife's denial of benefits. (Def. Mem., at 5.) However, § 155 provides the exclusive remedy for an insurer's bad faith denial of benefits. Specifically, § 155 "provides an extra-contractual remedy to policyholders whose insurer's refusal to recognize liability and pay a claim is vexatious and unreasonable." *Busse v. Paul Revere Life Ins. Co.*, 341 Ill. App. 3d 589, 598, 793 N.E.2d 779, 786 (1st Dist. 2003) (citing *Cramer v. Insurance Exch. Agency*, 174 Ill. 2d 513, 526, 675 N.E.2d 897, 904 (1996)). *See also Golden Rule Ins. Co. v. Schwartz*, 203 Ill. 2d 456, 468, 786 N.E.2d 1010, 1018 (2003) ("Illinois courts have regarded section 155 as the legislature's remedy to an insured who encounters unnecessary difficulties when an insurer withholds policy benefits.") (internal quotations omitted).

The *Busse* court expressly held that a "claim for anticipatory breach is in effect one for bad faith denial of benefits, and is therefore preempted by § 155, which the legislature has determined to be the remedy for such conduct." *Busse*, 341 Ill. App. 3d at 598, 793 N.E.2d at 786 (citing *Cramer*, 174 Ill. 2d at 527, 675 N.E.2d at 904 (admonishing courts to "look beyond the legal theory asserted to the conduct forming the basis for the claim.")) The court stressed that the Illinois Supreme Court has "cautioned against litigant attempts to make an 'end run' around the limits imposed by § 155 by creating a common law action 'that remedies the same basic evil.'" *Id.* (quoting *Cramer*, 174 Ill. 2d at 527, 675 N.E.2d at 904).

Menotti acknowledges this holding, but objects that it "represents one appellate court's view of the issue." (Pl. Resp., at 5.) Menotti suggests that this court should not follow *Busse* because "[n]o other appellate court has squarely addressed the issue, nor has the Illinois Supreme Court." (*Id.*) Such a position is entirely specious. When a federal court's jurisdiction over a case is based on diversity, the court "must apply state substantive law as interpreted by the highest court of the state." *Lucini Italia Co. v. Grappolini*, 231 F. Supp. 2d 764, 766-67 (N.D. Ill. 2002). *See also Baltzell v. R & R Trucking Co.*, 554 F.3d 1124, 1130 (7th Cir. 2009) ("Because this is a diversity case governed by Illinois law, we must resolve this matter how we think the Illinois Supreme Court

5

would.") Where, as here, the highest court of the state has not decided the precise issue, the law is clear that "we give 'great weight to the holdings of the state's intermediate appellate courts and ought to deviate from those holdings only when there are persuasive indications that the highest court of the state would decide the case differently from the decision of the intermediate appellate court.'" *Commonwealth Ins. Co. v. Stone Container Corp.*, 323 F.3d 507, 509 (7th Cir. 2003) (quoting *Allstate Ins. Co. v. Menards, Inc.*, 285 F.3d 630, 637 (7th Cir. 2002)). *See also Baltzell*, 554 F.3d at 1130.

Menotti has offered no indication whatsoever that the Illinois Supreme Court would decide the *Busse* case differently from the Illinois Appellate Court. To the contrary, the ruling appears consistent with the Illinois Supreme Court's position that parties should not be allowed to make an "end run" around § 155 by asserting common law claims that "remed[y] the same basic evil." *Cramer*, 174 Ill. 2d at 527, 675 N.E.2d at 904. Notably, the Seventh Circuit has held that where an insured seeks to recover future disability benefits that depend upon certain conditions precedent, future payments cannot be enforced until due. *Morgan v. Aetna Life Ins. Co.*, 157 F.2d 527, 530 (7th Cir. 1946). *See also Shyman v. Unum Life Ins. Co. of America*, No. 01 C 7366, 2002 WL 31133244, at *1 (N.D. Ill. Sept. 20, 2002) (dismissing claim for declaratory judgment that the plaintiff was entitled to disability benefits in the future where those benefits depended upon "whether he meets the terms and conditions for coverage in the future.")

Looking beyond Menotti's legal theory to the conduct forming the basis of his claim, the court agrees that, consistent with *Busse*, Menotti's claim for future disability benefits under a theory of anticipatory breach of contract is in effect a claim for bad faith denial of benefits and, thus, is preempted by § 155 of the Illinois Insurance Code.

## CONCLUSION

For the reasons stated here, MetLife's Motion to Dismiss Count II of the Second Amended Complaint [43] is granted.

Dated: April 20, 2009

ENTER:

*Nan R. Nolan*
_____
NAN R. NOLAN
United States Magistrate Judge