IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RALPH MENOTTI, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 08 C 2767 |
| ) | |
| THE METROPOLITAN LIFE INSURANCE ) | Judge Nan R. Nolan |
| COMPANY, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Ralph Menotti has filed a diversity suit alleging that Metropolitan Life Insurance Company ("MetLife") committed breach of contract and breach of the Illinois Insurance Code by failing to pay him benefits under a disability insurance policy. The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Currently before the court is MetLife's motion to compel. For the reasons set forth below, the motion is granted in part and denied in part.

## BACKGROUND

Menotti was injured in a motor vehicle accident on November 23, 2005. He quit working a few months later on July 30, 2006, claiming that he was unable to perform the functions of his job as a commodities broker with the Chicago Mercantile Exchange ("CME"). Menotti submitted a claim for benefits under his MetLife disability insurance policy (the "Policy"), and started receiving a monthly payment of $5,550. On December 18, 2007, however, MetLife sent Menotti a letter stating that it was ceasing his disability benefits because he was no longer disabled within the meaning of the Policy. Menotti disputes this assessment and insists that he is entitled to his full benefits.

MetLife has now issued written discovery requests to Menotti seeking documents and information relating to his occupation, potential witnesses and damages. Menotti objected that many of the requests are irrelevant and overbroad, prompting the instant motion to compel.

**DISCUSSION**

The Federal Rules permit discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party. FED. R. CIV. P. 26(b)(1). "Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation. To that end, either party may compel the other to disgorge whatever facts he has in his possession." *In re Thomas Consolidated Indus., Inc.*, No. 04 C 6185, 2005 WL 3776322, at *6 (N.D. Ill. May 19, 2005), *aff'd* 456 F.3d 719 (7th Cir. 2006) (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)).

MetLife first argues that Menotti has waived all of his objections by failing to serve timely discovery responses. MetLife admits, however, that it engaged in discussions with Menotti regarding his overdue responses, and that, rather than file a motion to compel, it accepted his assurances that responses were forthcoming. On these facts, a finding of blanket waiver is not appropriate. *Cf. Davis v. City of Springfield, IL*, Nos. 04-3168, 07-3096, 2009 WL 268893, at *3 (C.D. Ill. Jan. 30, 2009) (objection waived where there was "no evidence of any relevant contact between the parties" and counsel expressly asserted waiver in a letter to opposing counsel).

MetLife next argues that Menotti must respond to Document Request Nos. 4-7, 10, 13, 16, 22 and 28, and Interrogatory Nos. 1, 2, 6, 8, 14, 15, 18 and 20. The court addresses each in turn.

**1. Request No. 4**

Request No. 4 seeks documents reflecting the discontinuation of, or changes in Menotti's trading activities. Menotti objects that this request is overly broad and invades his privacy. He directs MetLife to his medical records, and has produced a single letter from MF Global Inc. stating that it formally closed Menotti's trading account on June 5, 2008 "due to inactivity." (Ex. 2 to Def.

Reply.) The court agrees that this response is inadequate. Menotti filed this lawsuit seeking to recover "Total Disability" and "Residual Disability" benefits, which both require a showing that Menotti is unable to perform the important duties of his occupation. Menotti worked as a commodities trader, so his ability to engage in trading activities appears relevant to his disability claim. **Menotti must produce all documents reflecting that he has discontinued or changed his trading activities. If no such documents exist, he must submit a signed affidavit to that effect, including a description of the efforts he took to locate them.**

2. **Request Nos. 5 and 6**

Request No. 5 seeks documents from January 1, 2001 to the present relating to the entities with which Menotti has transacted business, and the clearing houses through which he has cleared transactions. Request No. 6 asks for documents reflecting Menotti's membership in trade exchanges. Menotti again objects that these requests are overly broad and an invasion of privacy. MetLife argues that the documents are relevant to show the type of trading Menotti performed, and to explore other reasons that Menotti may have decided to stop trading, such as market changes or financial incentives. The court agrees that MetLife is not required to rely solely on Menotti's representations as to the nature of his trading activities, but can make its own assessment from an examination of the pertinent documents. With respect to Request No. 6, Menotti's membership in trade exchanges may be relevant to show the type of work he performed, as well as possible accommodations that could be made for his condition. **Menotti's objection to Request No. 6 is overruled, and the documents must be produced.**

With respect to Request No. 5, Menotti claims that he "does not possess" any documents. MetLife disputes this assertion, noting that during the claim process, Menotti produced a Monthly Statement from Man Financial. (Ex. 3 to Def. Reply.) The court cannot order Menotti to produce documents that he does not have. That said, Menotti has an affirmative duty to search for

3

documents that may be responsive to MetLife's requests. **For purposes of Request No. 5, Menotti must either produce the requested documents, or submit a signed affidavit stating that he has no such documents, and setting forth the efforts he took to locate them.**

3. **Request No. 7**

In Request No. 7, MetLife asks Menotti to produce all documents reflecting the terms of his employment with any entity from January 1, 2001 to the present. Menotti has produced pay stubs and claims to have nothing else. MetLife wants more, but offers no basis for believing that anything more exists. **To avoid further dispute, Menotti must submit a signed affidavit confirming that he has no other documents responsive to this request.**

4. **Request Nos. 10, 13 and 16 and Interrogatory No. 15**

Request No. 10 seeks documents reflecting Menotti's work history. Request Nos. 13 and 16 and Interrogatory No. 15 seek documents and information regarding Menotti's income and ownership interest in any business. In response to the document requests, Menotti has provided only tax returns for 2001 through 2008. Menotti has refused to provide any response to Interrogatory No. 15. The court agrees with MetLife that any work Menotti performed after he stopped trading is relevant to whether he is disabled. Indeed, to establish a "Total Disability," Menotti must show that he is "not engaged in any other gainful occupation." (Policy, Ex. A to SAC, at 6.) Menotti insists that he has no other documents "relative to his trading activity," but he says nothing about documents reflecting other employment. In that regard, MetLife suggests that Menotti has performed work as a hockey coach. **Menotti must produce documents responsive to Request No. 10, or submit a signed affidavit confirming that he has none.**

As for Request Nos. 13 and 16, Menotti claims that "aside from leasing [his] seat on the subject exchange, [he] possesses no other documents." (Pl. Resp., at 3.) MetLife objects, however, that he has not produced any documents related to the lease of his seat. Nor has Menotti

4

answered Interrogatory No. 15 regarding his business ownership interests. To recover Residual Disability benefits, Menotti must show a "Loss of Earnings," defined as "Your Prior Earnings minus Your Monthly Earnings for the month for which a benefit is claimed." (Policy, Ex. A to SAC, at 7, 8.) Under the Policy, Monthly Earnings includes "salary, wages, commissions, bonuses, fees, and income earned for services performed," as well as income from any portion of an owned business or profession. (*Id*. at 9.) **Menotti must produce documents relating to the lease of his seat on any exchange, and documents relating to his ownership in, and income derived from any business interest. If no such documents exist, Menotti must submit a signed affidavit to that effect, and describe the efforts he took to locate them. Menotti must also answer Interrogatory No. 15.**

    5.    Request No. 22

Request No. 22 seeks documents reflecting Menotti's loan applications, lines of credit, refinancing and mortgages from January 1, 2001 to the present. MetLife argues that these documents will contain Menotti's "representations of his financial situation and employment history." (Def. Reply, at 5.) The court is not persuaded that this information has more than a speculative connection to issues in this case. *See McClain v. TP Orthodontics*, No. 3:07-cv-113-JVB, 2008 WL 2477578, at *2 (N.D. Ind. June 16, 2008) ("Discovery may not be relevant if it has only a speculative or tenuous connection to issues in the underlying litigation.") **MetLife's motion to compel further response to Request No. 22 is denied.**

    6.    Request No. 28 and Interrogatory No. 6

Request No. 28 and Interrogatory No. 6 seek information relating to Menotti's damages. Menotti refers MetLife to his insurance policy, and claims that he is seeking "at least $1,132,000" plus attorneys' fees under the terms of the Policy, and additional unspecified damages under the

5

Illinois Insurance Code. These answers are wholly inadequate. Rule 26(a)(1)(A)(iii) requires parties to provide initial disclosures setting forth

> a computation of each category of damages claimed by the disclosing party – who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered.

See also Lancelot Investors Fund, L.P. v. TSM Holdings, Ltd., No. 07 C 4023, 2008 WL 1883435, at *6 (N.D. Ill. Apr. 28, 2008) ("Rule 26 requires that the calculation [of damages] be done by the party claiming damages.")

Menotti has provided neither the required computation nor the underlying documents on which the computation is based. **MetLife's motion to compel this information is granted.**

7.  **Interrogatory Nos. 1 and 2**

MetLife's first two interrogatories ask Menotti to identify all persons with knowledge of facts relevant to this case, and all clients and customers for whom he performed services or received compensation as a trader. Menotti directs MetLife to a list of his medical providers; states that he had approximately 40-50 customers; and identifies "family, friends, coworkers, customers, attorneys, agents, representatives, and medical providers" as persons with knowledge. **MetLife makes no compelling argument as to why it needs the names of Menotti's customers, and the motion to compel answers to Interrogatory No. 1 is denied.**

The court does agree with MetLife, however, that the generic list of categories of people with knowledge offered in response to Interrogatory No. 2 is inadequate. Rule 26(a)(1)(A)(i) requires that Menotti disclose

> the name and, if known, the address and telephone number of each individual likely to have discoverable information – along with the subjects of that information – that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment.

MetLife's interrogatory is entirely proper and Menotti must provide the requested information. *See, e.g., Amari Co. v. Burgess*, No. 07 C 1425, 2009 WL 1292860, at *4 (N.D. Ill. May 7, 2009) (granting motion to compel the identity of "each person with knowledge of the facts alleged in the Second Amended Complaint, indicating the person's present address and telephone number," as well as a detailed description of "each such person's knowledge.") **The motion to compel answers to Interrogatory No. 2 is granted.**

   8.   **Interrogatory No. 8**

Interrogatory No. 8 asks for information relating to Menotti's trading and investment activity from January 1, 2006 to the present. Menotti claims that this information is irrelevant and an invasion of privacy. To the extent Menotti worked as a trader, his trading and investment activity may be relevant to his disability claim. **MetLife's motion to compel an answer to Interrogatory No. 8 is granted.**

   9.   **Interrogatory No. 14**

Interrogatory No. 14 asks Menotti to identify the important duties of his occupation. Menotti insists that he did, as follows: "Plaintiff's position at CME required him being on his feet and active for 6 hours and 40 minutes each day. On 8/12/06, he began working at Trademark Commodities. The position is less physically strenuous than the previous one." Menotti suggests that MetLife take his deposition if it wants further information.

As noted, to recover "Total Disability" and "Residual Disability" benefits under the Policy, Menotti must show that he is unable to perform the important duties of his occupation. Interrogatory No. 14 seeks relevant information and MetLife is entitled to a full answer. Contrary to Menotti's assertion, a deposition is not a substitute for his obligations under Rule 33. *See In re Kenny Indus. Servs., LLC*, No. 03 B 4959, 2009 WL 1604989, at *6 (Bankr. N.D. Ill. June 5, 2009) (general reference to deposition testimony addressing the subject matter of an interrogatory "d[id]

not absolve the trustee of his obligation to give complete answers to legitimate interrogatories and document requests.") **The motion to compel with respect to Interrogatory No. 14 is granted.**

10.   **Interrogatory No. 18**

Interrogatory No. 18 asks Menotti to identify services and devices he has used or considered using to assist him in performing his occupational duties or life activities. Menotti states that while trading, he occasionally used a headset, and that he now wears a back brace almost daily. MetLife demands more, but offers no basis for believing that anything more exists. **To avoid further dispute, Menotti must submit an amended verified answer in response to Interrogatory No. 18, and must submit a signed affidavit confirming that he has not used or considered using any services or devices other than those identified in the amended answer.**

11.   **Interrogatory No. 20**

MetLife agrees that Menotti has now provided, in letter form, a complete answer to Interrogatory No. 20, which seeks the identity of his accountants. **Menotti still must submit, however, an amended verified answer to this interrogatory.**

## CONCLUSION

For the reasons stated here, MetLife's Motion to Compel [59] is granted in part and denied in part. Menotti must submit amended discovery responses consistent with this opinion by February 15, 2010. February 10, 2010 status hearing is reset to February 18, 2010 at 9:00 a.m.

ENTER:

Dated: January 25, 2010

*Nan R. Nolan*

NAN R. NOLAN
United States Magistrate Judge